UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROGER MALLICOAT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:11CV1218 TIA |
| | ) |
| ARCHER-DANIELS-MIDLAND | ) |
| COMPANY, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Daubert Motion to Exclude Leroy Grossman (ECF No. 27). The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c).

**Background**

Plaintiff filed this cause of action under the Jones Act, 46 U.S.C. § 30104, et seq. In the Complaint, Plaintiff alleges that he was employed as a deckineer on a towing vessel by Defendant American River Transportation Co. ("ARTCO"), a wholly owned subsidiary of Defendant Archer-Daniels-Midland Company ("ADM"). (Compl. Count I ¶¶ 5-9, ECF No. 1) On or about November 26, 2010, Plaintiff sustained injuries to his shoulders and other parts of his body when the vessel was attempting to make a lock on the Upper Mississippi River. (Id. at ¶¶ 10-11) Specifically, Plaintiff asserts that the lock line he was holding popped from his hands when entering a lock. (Id. at ¶ 11) As a result, Plaintiff claims that he suffered past and future physical and mental pain and suffering, permanent physical disability, and loss of wage earning capacity.

(Id. at ¶ 12) In addition, Plaintiff seeks recovery of expenses associated with his necessary and reasonable medical care. (Id. at Count II ¶ 7)

On March 1, 2013, Defendants filed a Daubert motion to exclude the testimony of Plaintiff's expert, Professor Leroy Grossman, an economist Plaintiff retained to offer an opinion regarding Plaintiff's past and future wage losses. Defendants argue that Professor Grossman's future wage loss opinions and calculations are inadmissible in that they rely on baseless and unsubstantiated assumptions. Plaintiff contends, however, that Professor Grossman's calculations are based on a standard methodology that takes into account the discount rate, inflation, tax rate, value of fringe benefits, work life expectancy, and retirement tables.

**Legal Standards**

Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. "[U]nder Rule 702 the trial judge acts as 'gatekeeper' screening evidence for relevance and reliability." Polski v. Quigley Corp., 538 F.3d 836, 838-39 (8th Cir. 2008) (quoting Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993)). In Daubert, the United States Supreme Court set forth a list of non-exhaustive factors which a court should consider in determining the admissibility of expert testimony. 509 U.S. at 593-94. Courts should consider: "(1) whether the theory or technique 'can be (and has been) tested'; (2) 'whether the theory or

technique has been subjected to peer review and publication'; (3) 'the known or potential rate of error'; and (4) whether the theory has been generally accepted." Peitzmeier v. Hennessy Indus., Inc., 97 F.3d 293, 297 (8th Cir. 1996) (quoting Daubert, 509 U.S. at 594). Subsequent cases have proposed additional factors including "whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case." Lauzon v. Senco Prods., Inc., 270 F.3d 681, 687 (8th Cir. 2001) (citation omitted). The rule pertaining to the admissibility of expert testimony favors admissibility over exclusion. Id. at 686. Therefore, "[t]he exclusion of an expert's opinion is proper only if it is so fundamentally unsupported that it can offer no assistance to the jury." Wood v. Minn. Mining & Mfg. Co., 112 F.3d 306, 309 (8th Cir. 1997) (internal quotations and citation omitted).

## Discussion

Defendants argue that this Court should exclude Professor Grossman's opinion because he based his opinion about future wage loss on the erroneous assumption that Plaintiff could make no more than minimum wage. Further, Defendants contend that Professor Grossman's assumption that Plaintiff would have continued working at the same or similar position but for the accident is unsupported by the evidence. Plaintiff asserts that Professor Grossman possesses distinguished qualifications[1], and he properly relied on standard methodology to calculate future

---

[1] Professor Grossman holds an undergraduate degree in business administration from Washington University in St. Louis and a Ph.D. in economics from Vanderbilt University. (Defs.' Mot. to Exclude, Ex. A p. 7, ECF No. 27-1) His present title is Professor Emeritus in the Department of Economics at Saint Louis University. (Id.)

3

earnings.  The undersigned finds that Professor Grossman's opinion regarding future earnings is based on unsupported speculation and should therefore be excluded under Daubert.

Defendants assert, and the undersigned agrees, that Professor Grossman's opinion that Plaintiff lost $507,099 in future wages based on the assumption that Plaintiff would only earn minimum wage over 17.5 years is deficient because the opinion is based on unsupported speculation.  Plaintiff does not dispute that Professor Grossman assumed that Plaintiff was only capable of earning minimum wage in the future.  (Defs.' Mot. to Exclude, Ex. A p. 2, ECF No. 27-1)  Plaintiff contends that the record supports this assumption.

However, Defendants correctly note that Professor Grossman acknowledged that his assumption that Plaintiff could earn no more than minimum wage was not supported by evidence. Professor Grossman's deposition testimony is as follows:

> Q. Professor Grossman, is there any reason to believe Mr. Mallicoat is relegated to minimum wage work?
> A. That's what I was asked to assume.  I have no idea.
> Q. Who asked you to assume that?
> A. His attorney.
> Q. Okay.  Do you have any documents that would suggest he can't make more money than that?
> A. No.
> Q. Okay.  If Mr. Mallicoat were able to make 13 or 14 dollars an hour, he would have less lost wages?
> A. Yes.
> Q. And your opinion would overstate how much he lost?
> A. The numbers I just gave you would overstate them, yes.
> Q. Okay.  Did you consider Mr. Mallicoat's education in determining whether he'd work more than minimum wage?
> A. No.  I don't really know the extent of his injury was, so I couldn't really tell you.
> Q. Okay.  You didn't consider anything but –
> A. Minimum wage.
> Q. – minimum wage.
> A. Right.

4

(Defs.' Mot. to Exclude, Ex. B, Grossman Dep. 49:8-50:12, ECF No. 27-2)

Professor Grossman's testimony indicates that he did not base his assumption that Plaintiff could only earn minimum wage on any objective facts. "Although mathematical exactness is not required, testimony of post-injury earning capacity must be based upon the proper factual foundation." McMillan v. Weeks Marine, Inc., 478 F. Supp. 2d 651, 657 (D. Del. 2007) (citing Benjamin v. Peter's Farm Condo. Owner's Ass'n, 820 F.2d 640, 642 (3d Cir. 1987)). Here, Defendants correctly point out that Professor Grossman's projections regarding Plaintiff's future earnings were based upon the assumption that Plaintiff was relegated to minimum wage for the remaining 17.5 years of employment at an artificially determined wage.

The record demonstrates that Plaintiff earned $50,000 in each of the 3 years preceding his injury, with additional benefits. (Pl.'s Mem. in Opp'n p. 4, ECF No. 31) Professor Grossman's calculation derives from the assumption that, post-injury, Plaintiff could only earn minimum wage. However, Plaintiff provides no support for the proposition that he could not earn more than minimum wage other than mere speculation deduced from his own deposition testimony. (Pl.'s Mem. in Opp'n pp. 4, 7, ECF No. 31)

"Departures from actual pre-injury earnings must be justified and cannot be unduly speculative. Like all expert testimony, an expert witness's calculations of future earning capacity are inadmissible under Federal Rule of Evidence 702 if based on 'unsupported speculation.'" Andler v. Clear Channel Broad., Inc., 670 F.3d 717, 727 (6th Cir. 2012) (citing Daubert, 509 U.S. at 589–90). Further, "[s]uch testimony should be excluded if it is based on 'unrealistic assumptions regarding the plaintiff's future employment prospects,' Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996), or 'facts that [a]re clearly contradicted by the

5

evidence,' Boyar v. Korean Air Lines Co., 954 F. Supp. 4, 8–9 (D.D.C. 1996)." Id. Additionally, the expert testimony regarding future earnings "should take into account factors such as the plaintiff's age, employment record, training, education, ability to work, and opportunities for advancement." Id.

In the instant case, Professor Grossman's opinion merely takes into account Plaintiff's age and life expectancy. (Defs.' Mot. to Exclude, Ex. A p. 2) Nowhere in the report or in his deposition testimony does Professor Grossman assess future earnings in light of the other pertinent factors. Indeed, as stated above, Professor Grossman explicitly stated that he was unaware of Plaintiff's educational background or the extent of his injuries. (Defs.' Mot. to Exclude, Ex. B, Grossman Dep. 49:8-50:12, ECF No. 27-2) However, Plaintiff argues that Defendants may cross-examine Professor Grossman's factual basis for his opinion during the trial such that the jury can assess whether the minimum wage assumption is proper. The undersigned disagrees.

Here, the Defendants correctly note that in the Vocational Evaluation, Vocational Expert Delores Gonzales concluded that Plaintiff may be able to perform work at the sedentary exertional level earning $12.65 per hour. (Defs.' Mot. to Exclude, Ex. C p. 16, ECF No. 27-3) Further, his transferable skills and computer training would allow him to make more than a general unskilled, entry-level, sedentary position commanded at about $8.50. (Id.) While Ms. Gonzales opined that Plaintiff would likely never earn what he had been earning, nothing in this report relegates Plaintiff to minimum wage work. Further, Plaintiff's deposition testimony demonstrates that after his injury, he worked building grain elevators and making $17 an hour. (Defs.' Reply Brief, Ex. G 159:8-160:10, ECF No. 33-4) As such, the evidence in the record does not support Professor

Grossman's assumption that Plaintiff was unable to make more than minimum wage in reaching his conclusion regarding Plaintiff's future earnings. "[W]here, as here, the expert's analysis is unsupported by the record, exclusion of that analysis is proper, as it can offer no assistance to the jury." Cole v. Homier Distrib. Co., Inc., 599 F.3d 856, 865 (8th Cir. 2010) (finding the expert's report to be factually flawed where the expert was unaware of or disregarded certain facts); see also Barclay v. Cameron Charter Boats, Inc., No. 2:09CV462, 2011 WL 3468380, at *4 (W.D. La. Aug. 8, 2011) (excluding expert testimony regarding future earnings where no facts or evidence supported the expert's opinion that the plaintiff was unable to make more than minimum wage).

Similarly, Professor Grossman's opinion regarding Plaintiff's past lost wages is also flawed. Professor Grossman assumed that Plaintiff would have remained in the same or similar occupation but for his injury and opined that Plaintiff lost $109,088 in wages from January 1, 2011 through January 31, 2013. (Defs.' Mot. to Exclude, Ex. A, ECF No. 27-1) However, the record shows that Plaintiff was discharged for dishonesty. In seeking unemployment benefits in Illinois, Plaintiff argued that Defendants knew about his conviction for attempted murder as early as 2008. The Illinois Department of Employment Security found, however, that Plaintiff had lied on his application by stating that he had not been convicted of a felony, despite his 1992 conviction for attempted murder. (Defs.' Reply Brief, Ex. D, ECF No. 33-1) The Illinois Department of Employment Security affirmed the denial of unemployment benefits, finding:

> The request for disclosure of felony convictions was reasonable. The information was material in the selection of the claimant, specifically: the employer will not hire an individual with an attempt murder conviction. The claimant acknowledges he intentionally lied, so the false statement was wilful and the falsification injured

7

> the interests of the employer. Although there are questions about whether the employer knew of the conviction early on and did not act on it, thus condoning or waiving the falsehood, there is only speculation, not evidence, that the employer knew of the conviction.

(Id.)

Plaintiff presents no evidence that Defendants knew about the conviction prior to his termination and would have continued to employ him had the accident not occurred. As in his opinion regarding future earnings, Professor Grossman's opinion pertaining to past wages is based purely on speculation and contains no factual support. Indeed, Professor Grossman testified that he did not consider Plaintiff's June 2011 termination for lying on his employment application about prior felony convictions when assuming that Plaintiff would have continued his same or similar position. (Defs.' Mot. to Exclude, Ex. B 28:22-25, ECF No. 27-2) Thus, Professor Grossman's opinion regarding past lost wages is unreliable and misleading to a jury, such that the testimony should be excluded under Daubert for failure to take into account Plaintiff's termination for lying about his felony convictions on his application. See, e.g., Romero v. Reiman Corp., No. 11-CV-216-F, 2011 WL 11037890, at *6 (D. Wyo. Dec. 21, 2011) (excluding expert testimony under Daubert where the expert failed to consider the plaintiff's illegal status); Garay v. Missouri Pac. R. Co., 60 F. Supp. 2d 1168, 1173 (D. Kan. 1999) (finding expert's opinion regarding future wages speculative and unreliable where expert failed to take into account illegal status).

In short, Professor Grossman's opinion regarding lost wages from January 1, 2010 and January 31, 2013, as well as lost future earnings, is based on assumptions not supported by the record. Therefore, under Daubert, the Court will exclude Professor Grossman's testimony

regarding past and future lost wages. Daubert, 509 U.S. at 590 (1993); Andler, 670 F.3d at 737.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Daubert Motion to Exclude Leroy Grossman (ECF No. 27) is **GRANTED.**

/s/ Terry I. Adelman<br>UNITED STATES MAGISTRATE JUDGE

Dated this  12th  day of November, 2013.